PROVIDENCE COUNTY.

———◆———

PETITION OF DANIEL LYMAN *et al.* for leave to sell trust property.

In a petition in equity brought under Gen. Stat. R. I. cap. 167, § 7, for the sale of a trust estate: —

*Held*, that all living persons who by any contingency might be entitled to the estate must be made parties, and that following the analogy of Gen. Stat. R. I. cap. 219, § 19, regulating partition by equity process and at law, the interest of persons not in being may be effectually represented by a person appointed by the court for this purpose.

PETITION in equity under Gen. Stat. R. I. cap. 167, § 7, for the sale of trust property.

The following opinion was given by the court on the question who should be made parties to the proceeding.

*June* 26, 1875. POTTER, J.  This is a petition in equity under our statute, empowering this court to authorize a sale of trust estates for the purpose of changing the investment; and the question is who should be made parties in the proceeding.

Elisha Dyer by his will, proved March 21, 1854, devised certain real estate to trustees for the benefit of his daughter Caroline Lyman for life, and on her decease to transfer it to such one or more of her children or grandchildren as she should by will appoint, and if she dies without leaving any such will, then to convey it to those who should be her heirs at law by the statute of descents.

Mrs. Lyman is living, and if she should die now without a will, her son Daniel, if living, would take the whole property; if he should not survive her and leave no child or children, then her brother Elisha and sister Frances J. Vinton would, if living, take it; and if either of them were dead leaving children, those children would succeed.  So that there are several contingencies on Mrs. Lyman's death.

The authorities on this point are few.  Sales in suits for partition are of recent introduction in England and in this country; and sales of trust property were not formerly frequent, and when made were often made under special legislative acts.  In the case of *Hopkins* v. *Hopkins*, 1 Atk. 581, 590, Lord Hardwicke says it

was an established rule that in case of a trust, no matter how many contingent limitations there might be, the trustees and the first person in estate were the only necessary parties: the freehold was in the trustees. But in that case the controversy seems to have been as to who (if any one) was entitled to the first beneficiary interest; the heir at law claiming it. See also 2 Daniel Ch. Pr. 3d Amer. ed. 1600; *Cholmondeley* v. *Clinton*, 2 Jac. & W. 2, 5, 133, which was a question of construction of settlement in a trust deed; *Same Case*, affirmed 4 Bligh, 1; *Lloyd* v. *Johns*, 9 Ves. 37, 52, 55, 57, 63 (where Lord Eldon refers by way of analogy to the case of a common recovery); *Clagget* v. *Hall*, 9 Gill & J. 80; *Gifford* v. *Hort*, 1 Sch. & Lef. 386, 396, 407, 410; where Lord Redesdale says he cannot find that the point has anywhere been ever fully discussed, and remarks on the frauds which have been committed upon persons entitled under settlements, by connivance with the tenant for life. It was said in argument (392), that at law a judgment against tenant in tail does not bind the remainder-man (*Ferrar's case*, 6 Rep. 8 *a*), and that a common recovery binds only from the policy of the law and from the supposed recompense made.

We can easily understand why in partition and many other cases a court might hold a share to be well represented by the first tenant in tail or person holding the first estate; while the same reasons would not apply where the object was a sale of the property or a total change of its nature.

On the other hand, in *Goodess* v. *Williams*, A. D. 1843, 2 Y. & C. C. C. 595 (Eng. Ch. Reports, vol. 21), which was a bill to subject trust land to sale for debts, the trust was for the wife and children, and if they died, &c., &c., then to the testator's three sisters and their children, the wife and her children only being made parties; it was held that the inheritance was not represented. See also *Att'y Gen.* v. *Goddard*, 1 Turn. & R. 348; Anon. Case 936, 12 Mod. 560; *Sherrit* v. *Birch*, 3 Bro. C. C. *228; *Hunt et al.* v. *Booth at als.* 1 Freeman (Miss.), 215, where property was limited to infants in remainder, and citing *Herring* v. *Yoe*, 1 Atk. 290, where property was limited to husband for life, then to the wife for life with remainders. *Stephen* v. *Terrel*, 3 T. B. Mon. 131; *Osborne* v. *Usher*, 2 Bro. P. C. 314; *Wingfield* v. *Whaley*, 2 Bro. P. C. 447; Story's Eq. Pleading

(Redfield's ed.), §§ 144, 147 ; Smith's ed. of Mitford, *173 ; *Collins* v. *Lofftus*, 10 Leigh, 5, holding that in equity the *cestui que trust* is not generally bound by a decree against the trustee. And see comments in Smith's Chancery Practice, 94, on No. 30 of Lord Cottenham's Equity Rules of 1841, which is the same as our Equity Rule No. 25 as to suits against trustees.

In many of the states (and also in this) sales of trust property, where minors and persons not *in esse* might be interested, have been authorized by special acts, which have prescribed the mode of sale and reinvestment ; and these sales have been sustained by the courts. *Sohier* v. *Mass. Gen. Hospital*, 3 Cush. 483 ; *Clark* v. *Hayes*, 9 Gray, 426 ; *Williamson* v. *Berry*, 8 How. U. S. 495, 537 ; *Legget* v. *Hunter*, 19 N. Y. 446, where all the judges concurred ; and see the cases there cited.

But the question now is, whether, in a proceeding to direct a sale not under any special legislation but under the general power of the court, we can make a decree which will bind the contingent interests not represented.

We have been referred to the case of *Clarke* v. *Cordis*, 4 Allen, 466, 470, 475. The proceeding there was under an act authorizing trustees, &c., under direction of the court, to compromise or arbitrate claims, and providing that the decision should bind all future contingent interests, and that the court might appoint a person to represent such future contingent interests. Their statute provides that the trustees, &c., " with all other parties *in being*, claiming an interest, shall be parties." The decision is to bind future contingent interests, " as well as the interests of the parties in being." From this it might be argued that the contingent interests spoken of were such as might afterwards come to persons *not then* in being, and that all persons then in being must be parties. It appears (p. 470) that there were persons in being having contingent interests who were not parties. Yet the court held that they need not be parties.

Our statute has made no provision as to parties, but has left the matter to be decided on general principles. But in our statute regulating partition and sale of land in suits for partition, the legislature has provided that the partition or sale shall bind all interests for life, in reversion, or remainder, vested or contingent, whether to persons in being and ascertained or not in being

and to be ascertained, &c., &c., " Provided that all persons *in being* at the time of the commencement of the suit for partition, interested in the estate, be made parties to the proceedings, and their title or interest fully shown upon the record by the pleadings ; and provided, also, that, before final judgment or decree for partition or sale in any such case, the court shall appoint some discreet person to represent the interests of persons, if any, not then in being." Gen. Stat. R. I. cap. 219, § 19.

While we do not wish to undertake to lay down any positive rule for all cases, we think it is safe to follow the rule here laid down. The cases are analogous. The object in both is to sell property in which there are contingent interests. What would be a sufficient protection to such interests in case of a sale for partition, may well be held to be sufficient in case of a sale of trust property. And as it has been held that in cases of partition or sale, the fact, that parties not *in esse* may be entitled, cannot be an objection to a decree (see 2 Hoffman's Ch. Prac. 161, and cases cited), we think that here such interests may well be represented by a person appointed for that purpose ; but that all living persons, who might by any contingency be entitled, must be made parties.                     *Order accordingly.*

*James M. Ripley*, for petitioners.

MATTESON, J., did not sit with the court when the above case was heard.

━━━━━━

PETITION OF AMY THAYER for a writ of Habeas Corpus.

An execution for costs against a plaintiff in trover issued against the body, and was served by arrest.

*Held*, on petition for habeas corpus, that, as it did not appear that the imprisoned plaintiff was about departing from the state without leaving sufficient estate to satisfy the judgment, or that he had fraudulently concealed and detained or disposed of his property, the execution against the body was illegal.

A judgment for the defendant for his costs is to be treated, whatever be the form of the action, as judgment for a debt.

The word, "defendant," in Gen. Stat. R. I. cap. 211, § 14, means defendant in execution.

*July* 9, 1875.   MATTESON, J.   The petitioner seeks to be discharged from imprisonment on an execution for costs awarded against her in an action of trover, in which she was plaintiff and Mary M. Thayer was defendant.

The only authority for issuing an execution against the body is found in section 14 of chapter 211 of the General Statutes. It was the evident intent of the General Assembly that no person should be imprisoned on execution unless he was guilty of a penal offence, or a tort other than a trespass in which title to the close was in dispute, or unless he came within the classes of debtors specified, viz.: those against whom the cause of action accrued before the 31st of March, 1870; those held to bail upon the original writ, or writ of mesne process in the suit; those about to depart from the state without leaving therein sufficient real or personal estate to satisfy the judgment; those guilty of fraud in contracting the debt for the recovery of which the judgment was rendered, or in the concealment, detention, or disposition of their property. It will be perceived, by reference to the section mentioned, that no provision in terms is made for an execution against the body of a plaintiff, but only for an execution against the body of a defendant. The respondent's counsel suggests that the word "defendant" should be construed to mean the defendant in execution, and not merely the defendant in the suit, and, therefore, to include a plaintiff against whom a judgment has been obtained by a defendant. We think the section susceptible of this construction, and are led to adopt it, because there is no other authority for an execution against the body of a plaintiff; and we cannot suppose that the General Assembly did not intend to give to a defendant, who has recovered judgment for costs, or for a balance due him upon a plea in set-off against a plaintiff, the same process to compel the payment of his costs or debt which the plaintiff, if successful, would have had against the defendant.

No reason occurs to us why a plaintiff, whatever be the nature of the action, against whom judgment has been rendered for costs, should be dealt with differently than if the judgment were for a debt. He is not the offender or wrong-doer whose offence or tort is the subject of the suit. If he does not prevail, he incurs no liability which can be enforced against him in the suit, except to pay the defendant's costs. These are awarded to the defendant to indemnify him for the expenses of his defence, so far as sufficient, rather than to punish the plaintiff. If the plaintiff has proceeded wrongfully, the defendant must seek redress

as plaintiff in another action. In *Thompson* v. *Berry*, 5 R. I. 95, it was held that a plaintiff in an action of trespass and ejectment, against whom judgment had been rendered for costs, and who was liable to be committed on execution, was entitled to the benefit of the poor *debtor's* oath. Judge Brayton, in the opinion of the court, remarks: " There is in principle no ground of distinction between a judgment for costs and for a preëxisting debt or damages. It is equally a judgment for money which it requires the same means to pay."

The judgment against the petitioner was rendered on the 9th of February, 1875. It did not appear that she was about to depart from the state, without leaving sufficient real or personal estate to satisfy the judgment, or that she had fraudulently concealed, detained, or disposed of her property. Unless one or more of these appeared, the court had no authority to issue execution against her body. We therefore grant the prayer of the petition, and order that she be discharged. *Petition granted.*

*Simon S. Lapham*, for petitioner.

*Edwin Aldrich*, *contra*.